May it please the Court, Kristen Thayer on behalf of Appellant Thomas Franco. I'll try to reserve two minutes for rebuttal and I'll watch my time. I'd like to focus on the suppression issue today, if that's acceptable to the Court, and specifically two issues. First, that the impound of the car was not authorized because they knew the car was not stolen when it was impounded. And second, that the Court should decline to address the government's new suppression issues raised because they've been waived and they're not supported by this record. So turning first to the impound, the officer spoke to the registered owner of this Honda before they impounded the car. That's in the sworn affidavit of the officer at the record at 141. That means that there was absolutely no ground to impound this car under any of the government's theories. Under the community caretaking theory, it's not – there's no risk of the car being stolen, quote, again, as the officer said, because it was never stolen in the first place. Sarah West was present. She was lawfully given permission by the registered owner to have the car. She was present. She could take possession of the car, either go get it registered or get it towed. Was she present when they stopped the car? She was not. Okay. She was in Wal-Mart or some kind of store? Yes. She had gotten out, I think, at the front door of the Wal-Mart, gone inside, and was not there when it was parked originally. Eventually, though, the car was subject to impound, wasn't it? I'm sorry, Your Honor? Eventually, the car was subject to impound. No. It's actually that originally it may have been, but when the officers, especially when they had actually spoken to the registered owner who said, yes, they have authors. No, but it was cold plate. It couldn't be driven on the public street. Your Honor, but that's not a ground to impound under the standardized metro written policy. The officers testify generally. They always do that, but that's not what the policy says. The policy says that one of the grounds the government tries to say authorizes impound is that if any other statute, code, ordinance authorizes impound, the officers could impound under that policy. But that a car is cold plated, that a statute makes it illegal to cold plate a car doesn't authorize impound of the car. So, for instance, I cited a case in the reply brief where a California statute, independent of a written police policy, said you can impound under certain procedures. That's not what we have here, and that's what the policy requires. Is cold plating a violation of the law? Yes. Okay. Yes. It is a violation. So a person who does a cold plate on a car has violated the law. Yes. And that was the finding, that the car was cold plated. It wasn't the right plate. But that is an independent inquiry from whether they could impound the car. What would have been different in the record had the government raised the automobile exception or search incident to arrest below? Would the record look any different? Yes, it would, Your Honor, especially first for the search incident to arrest, the scope of the search. That was an inquiry that was just never undertaken before because there was no reason to. The government never raised search incident to arrest. That's a much more limited basis to search a car that both parties have identified has spatial temporal proximity requirements and the actual search needs to be limited to the basis for arrest. That's a legal argument, but factually, don't all the facts apply to all of the theories? Well, I would submit that the government has failed to acknowledge that there was a factual finding in the R&R, the magistrate's R&R, that the officer did not search in any of the places of the car where you would find indicia of ownership, such as the glove box or the console. And that's at the record at 43. So the government submits that the record here supports its theory, but there's findings against search incident to arrest. And I'd also like to note that the magistrate judge expressly recognized that the government was not relying on the automobile exception. The R&R at page 40 of our record states that the government is not claiming that there was an automobile exception justified the search here. I think that's about as expressed finding of waiver as can be found in a district court record below. The R&R explicitly declined to go into the automobile exception because the government wasn't pursuing it. So that's waiver. And furthermore, I would submit that the Scott case cited in the reply brief at page 14 submits that the way the government should have gone about it is at the very least, orally raising the issue after the suppression hearing and then raising it in the response to the objections. That was enough to preserve the issue in the Scott case. We don't have that here. Kennedy, suppose that we do get to the issue of search incident to arrest. What is your position on that, aside from the fact that it's waived? Your Honor, that there was not probable cause to arrest at the time that they found the gun in the car. And I would submit that at best there was reasonable suspicion. You said there was not? Not probable cause to arrest for a stolen possession of a stolen vehicle. And that seems to be the government's main contention. Because the government is focusing on just facts that it thinks support probable cause, but the totality is what must be considered. And we have Mr. Franco being extremely compliant, telling them precisely where to go in the Walmart to find the registered owner. They don't have to believe him, but they can do what officers do, investigate, go into the Walmart, find Sarah West, ask her about the car. They're not allowed to ignore facts and only focus on things they think support probable cause that this car is stolen. But what were they supposed to do there if they stopped the vehicle and he says it belongs to the lady who's inside Walmart? Do they have to wait until the lady comes out or go into Walmart to find her before they can look through the car at all? Is that your theory? Yes, Your Honor. And I think that it would be reasonable to detain him at that time, a reasonable Terry Stobb investigative. This is a classic investigative basis, justifications for further investigation exist here. Did they run something through to find if he had a prior criminal record at some point here? Yes. They did run his, found out his criminal history before they searched the car. And when was that? Before the lady showed up? Yes. Claimed it was her car? Yes. So she showed up after the gun was found in the car. So he, the officer was looking for the VIN number, right? Yes. Which is normally found either in the dashboard or the door. Yeah, the side of the car. The side of the panel of the door. But then there's testimony in the record that indicates he was also looking for paperwork related to ownership and then found the gun. So is that not true? That's not true. The R&R at page 43 states there was no testimony that that officer who searched the car actually looked in the glove box. He said, he mentioned something as he was walking to the car, like, let me see if there's some paperwork here. But then when he actually testified, that's on the body cam. And when he actually testified, though, he said, no, I was just looking around for things. And the body cam doesn't capture him looking at any, looking for any paperwork. In fact, he goes into a tiny Crown Royal bag that contained the bullets. So that's not a place where you would find initiative ownership, registration paperwork, or maybe a license plate that had been switched out. So the government is relying on these theories to get into the car, but it doesn't authorize, even if they're allowed to get in the car, it doesn't authorize the type of search that occurred here. The record doesn't support the search, the scope of the search. It was just a general investigative search, and that's not allowed. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Josh Handel for the United States. Officer Hager's search of the cold-plated vehicle was justified under each of three recognized exceptions to the warrant requirement. First, as a search incident to a valid arrest where there is reasonable suspicion that the vehicle contains evidence of the crime of arrest. Second, under the automobile exception, where there is probable cause that evidence of some crime is contained in the vehicle. And third, through the inevitable discovery of the contents of the vehicle during the mandatory police inventory that would occur after the cold-plated vehicle was ultimately impounded. Now, as to the first two exceptions, those were not argued below. Is that true? Yes, that's correct, Your Honor. And it's sort of a – I don't want to say, but the prosecutor must have been asleep at the wheel on this car case not to argue an automobile exception or to argue incident to arrest. So you're kind of left with a pretty thin third prong, aren't you? It is not necessarily how I would have approached this issue if I had been. I understand that. I understand that. It was our position below and remains our position here that inevitable discovery forecloses the Fourth Amendment challenge. Inevitable because why? Because the car was subject to impoundment? Correct, Your Honor. What about counsel's argument that it didn't meet any of the criteria in the written impoundment policy? Well, I don't think that's true. What is the ground you're relying on for impoundment? Sure. So there are several grounds in the written policy that support the officer's procedure to impound cold-plated vehicles. We would point to, at the very least, Provision 2 of the policy, which says whenever a vehicle is part of evidence, it's undisputed that cold-plating a vehicle is a crime. It's an arrestable offense under Nevada law. A cold-plated vehicle is quite obviously evidence of the crime of cold-plating a vehicle. So I don't see how under the plain text of the policy, at the very least, Provision 2 wouldn't authorize what, again, the officers testified was standard operating procedure of impounding cold-plated vehicles. When did the arrest occur in this case? Your Honor, so the arrest, certainly the arrest occurred prior to the initiation of the search. There was some dispute in the district court as to whether this was a Terry stop at the moment when Mr. Franco was ordered out of his vehicle and handcuffed and then later developed into an arrest as officers developed probable cause. Our submission to this court is that there was probable cause the minute that officer, or the minute that Mr. Franco exited the vehicle to arrest him. And I think that, I think it's important to be specific about exactly what the. Okay. The minute he, would you say the minute he stepped out of the car? Yes, Your Honor. And that's for what offense? So I think there were possibly three offenses for which there was probable cause there. So we know that Mr. Franco was driving a cold-plated vehicle, which is itself an arrestable offense under Nevada law. We know that the vehicle was of a frequently stolen make and model and that Mr. Franco was operating it in a high crime area. And I think that those also, in addition to the cold plating, those go to probable cause that you have a case of possession of a stolen vehicle here. We also have testimony on rebutted testimony that a small metal object resembling a shaved key fell from Mr. Franco's lap as he exited the vehicle. And as the government pointed out in our brief to this court, possessing burglary tools, such as shaved keys is likewise an arrestable offense under Nevada law. So I think that constellation of facts was more than sufficient to furnish probable cause that the officers had intercepted Mr. Franco during the commission of a crime. And in the minutes after they placed Mr. Franco into custody, the officers learned three additional relevant facts that further buttressed their suspicion that this was a case of possession of a stolen vehicle. First, that the steering column of the vehicle was visibly damaged in a manner that appeared consistent with vehicle theft. Second, that while the vehicle had not yet been reported stolen, it was also not registered to the person Mr. Franco claimed was its owner. And third, that Mr. Franco had 10 prior felony convictions, including for attempted possession of a stolen vehicle in 2004, transfer of stolen vehicles in 2006, and possession of a stolen vehicle in 2007. Did they know that when they looked in this Crown Royal bag or whatever it was? Yes, Your Honor. They knew all of that before the search is even initiated. And at that point, in the words of Officer Donovan, everything about this situation resembles your basic stolen vehicle lineup. The question I have is why should we consider these additional theories that were essentially waived? And I understand not under your watch, so to speak. But the record would be developed somewhat differently if you're arguing against a different theory. So why should we now on appeal for the first time consider, for example, the automobile exception or search incident to arrest? Sure. A couple of points there, Your Honor. So as you said in United States v. Ruiz, which we cite on page 8 of our brief, this court may affirm a district court's denial of a motion to suppress on any basis supported in the record. And the record here reflects that the lawfulness of Mr. Franco's arrest and the lawfulness of the ensuing search were extensively briefed during the suppression proceedings. Mr. Franco's primary argument in his motion to suppress was that police lacked probable cause for his arrest, and thus that the search incident to that arrest was unlawful. In response, the government rebutted Mr. Franco's argument that his arrest was unlawful and thus tainted the ensuing search by pointing to facts such as the shaved key, the damaged steering column, and Mr. Franco's prior convictions. That's the same basis underlying the search incident to arrest and automobile exception arguments here. Now it's true, uh, as, as your honor pointed out that the government focused most of its brief, uh, before the magistrate judge on the inventory exception and the inevitable discovery doctrine. But as you have said a number of times, parties are not limited to the precise arguments they made below. So long as their arguments on appeal relate to claims previously raised in the litigation and the overarching claims here that there was probable cause to arrest Mr. Franco and that officer Hager's resulting search of the vehicle was lawful are the same ones that were controverted between the parties in the district court. And finally, contrary to what Mr. Franco asserted in his reply brief, no one is asking this court to act as a fact finder in the first instance because the facts of the arrest and the search are not disputed. And the existence of probable cause the reasonable likelihood of finding evidence in a vehicle and the interpretation of various sections of police department policy are all questions of law that this court is well equipped to reach. Even if there's no parallel conclusion of law below, as the Supreme court said in Ornelas versus United States quote, questions of reasonable suspicion and probable cause to make a warrantless search should be reviewed de novo because the search incident to arrest exception and the automobile exception are arguments relating to claims litigated below. And because both are amply supported by the record, they're absolutely available as grounds for affirmance here. And just briefly, I want to get back to the point at which the search was conducted because again, we have all of these indicia of a stolen vehicle. We have Mr. Franco's extensive criminal history, which includes a number of offenses dealing with stolen vehicles. And importantly, none of the facts underlying the officer's suspicions changed until Sarah West exited the Walmart and approached the scene, which didn't occur as my friend noted, did not occur until minutes after officer Hager had discovered the bullets and the firearm inside the vehicle. So there was no fourth amendment violation here. The district court correctly denied Mr. Franco's suppression motion. I'm happy to address the trial testimony or sentencing arguments. If the court has any questions on those, I think those are well briefed and counsel felt the same way. So I don't think we need anything further on that. Okay. Is there still a violation of the, the lady comes out and says the car belonged to her dad, father or something like that? Is that what happened? Um, so, uh, yeah. Ms. Ms. West came out of the store and, um, informed the officers that she had been the one who cold plated the vehicle that the vehicle was registered to her father who lived in Arizona, but that she was driving it with his permission. Okay. But it still was cold plated car. That's correct. Your Honor. Um, unless the court has further questions, I'll rest on my brief and respectfully request that you affirm the judgment below. Thank you. Thank you. Excuse me. Thank you, Your Honor. Three, three quick points. First, as to the impound, uh, subsection two of the impound policy states that whenever a vehicle is part of evidence, such as a homicide inside of a vehicle, or when a vehicle is being used to transport narcotics, that's the example that the, that the policy written policy gives as to when a vehicle is quote part of evidence. That's just not the case here. The cold plating occurred on the outside of the vehicle. It's a moving violation. It is not, um, evidence inside of the vehicle. Uh, second, the government doesn't, as to the waiver issue, the government doesn't cite to any case where this court has affirmed for any on a ground that was waived below. So while this court can affirm, uh, denial of a suppression, it has discretion to, I would add, um, affirm on any basis supported by the record. This court has never, I've never found a case where this court has affirmed on a waived ground. Um, that's just the law of the circuit is that we, this court does not address waived issues. And that would be the automobile expression. It exception was waived as the honor recognized. Finally, as the search incident to arrest doctrine, the, uh, this court would have to make factual findings as to the scope of the search. And I understand a lot of the suppression issues are mixed questions of fact and law, but the scope of the search is a highly factual inquiry. And it's improper for the government to ask this court to do it in the first instance, especially when there are findings to say the officer wasn't even looking for an issue of ownership. So probably the officers supposed to do, uh, based on your theory, once they found out that this lady had, uh, had an ownership to the vehicle, but it's still cold plate. Could she have driven it off at that point? No, Your Honor, but it's the middle of the day. She's allowed to have possession of it. She could go get it registered. You know, there's DMVs all over Las Vegas. Um, she could have paid for her own tow. The Torres case addressed metros, the Las Vegas metro policy before where there is a provision saying if the registered owner is around, they can tow the car here. We have. We don't. She's not exactly the registered owner. Correct. But they had spoken to him and there was no dispute at that point that he gave legal authorization for her to have that car. So that's just a crucial fact here that doesn't, um, allow the impound. It was unlawful. So thank you, Your Honors. Thank you. Thank you both for argument this morning. United States versus Franco is submitted.
judges: Siler, Tashima, McKeown